# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE | * | CIVIL ACTION |
| LINE CORPORATION | * | |
| | * | NO. 06-6316 |
| VERSUS | * | c/w 08-4039 |
| | * | |
| TRANSOCEAN OFFSHORE USA INC., | * | SECTION L "4" |
| TRANSOCEAN INC. AND THE MODU | * | |
| TRANSOCEAN MARIANAS | * | JUDGE FALLON |
| | * | MAGISTRATE JUDGE ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OR, ALTERNATIVELY, MOTION TO INVOKE *THE LOUISIANA* RULE AGAINST TRANSOCEAN

**MAY IT PLEASE THE COURT:**

Plaintiff, Transcontinental Gas Pipe Line Corporation ("Transco"), files this memorandum in support of its Motion for Partial Summary Judgment seeking an Order declaring that *The Louisiana* Rule will govern certain liability aspects of this case if causation is established at trial.[1] Plaintiff requests that this Honorable Court decide this legal question so that the issues will be narrowed and clear going into the trial of this matter. Transco files the instant motion because the undisputed material facts establish that (1) on or about September 23, 2005, Transocean's vessel, the MODU TRANSOCEAN MARIANAS (the "MARIANAS"), became unmoored and drifted

---

[1] This Motion only applies to Transco's theory of liability based on Transocean's failure to properly moor, equip, and/or maintain its vessel and mooring system. Transco has other theories of recovery that are not implicated by this Motion, including Transocean's failure to investigate whether the MARIANAS may have struck pipelines as it drifted to its grounded location, which is the subject of Transco's separately filed Motion. Thus, Transco notes that the instant motion for *partial* summary judgment is intended to address only the issue of Transocean's negligence and it is not intended to affect the threshold issue of Transco having to prove causation.

unmanned in the Gulf of Mexico for approximately 130 nautical miles and (2) Transco alleges in this case that while the MARIANAS was adrift, it crossed over and struck Transco's 20" pipeline in Eugene Island Block 135, as well as Transco's 8" pipeline in Eugene Island Block 133. Therefore, Transco submits that, according to the long established admiralty principle set forth by the U.S. Supreme Court in *The Louisiana*[2] that applies when a drifting vessel strikes a stationary object, once Transco proves a prima facie case of the allision, Transocean is presumed to be at fault unless it can prove by a preponderance of the evidence that "the drifting was the result of inevitable accident, or a vis major, which human skill and precaution, and a proper display of nautical skill could not have prevented."[3]

## RELEVANT BACKGROUND FACTS

On or about September 23, 2005, during Hurricane Rita Transocean's offshore drilling vessel, the MODU TRANSOCEAN MARIANAS, broke free of its moorings in Green Canyon Block 821 and was cast adrift in a northwesterly direction through the Gulf of Mexico, ultimately grounding approximately 130 nautical miles away in Eugene Island Block 113A where it was found by Transocean on September 25, 2005.

Transco filed the instant suit against Transocean alleging that while the MARIANAS was adrift, it crossed over and struck Transco's 20" pipeline in Eugene Island Block 135, as well as Transco's 8" pipeline in Eugene Island Block 133. Transco's 20' pipeline subsequently ruptured in March of 2006 and Transco alleges the rupture was a result of the initial impact by the MARIANAS. The rupture of Transco's 20" line caused another Transco pipeline – a connected 16" line – to flood with debris and seawater. Transco further alleges that the 8" pipeline was

---

[2]    70 U.S. (3 Wall.) 164, 18 L.Ed. 85 (1865).
[3]    *Id*. at 173.

severed immediately upon contact by the MARIANAS.  The damage to Transco's pipelines resulted in substantial repair costs, loss of revenue, overhead, and other expenses totaling $21,360,538.  Though not the subject of the instant Motion, overwhelming evidence will be presented to support Transco's burden of proving that the MARIANAS struck Transco's pipelines while adrift during Hurricane Rita.  As will be fully established at the trial of this matter, the MARIANAS drifted in a northwesterly direction until it contacted the seabed in approximately 75 feet of water and began leaving a unique, 12 mile drag scar that precisely matches the features of the MARIANAS and which came to an end at the exact location that the MARIANAS was found aground in 65 feet of water.  Transco's ruptured pipelines were directly in the path of the subject drag scar.  While this issue of causation is not the subject of this Motion, a more detailed discussion was presented in EOG's Memorandum in Opposition to Transocean's Motion for Summary Judgment. [Docket #147].

As discussed below, the applicable law and undisputed facts establish that the *The Louisiana* rule will govern the liability aspects of this case if causation is established.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of the motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco*, 76 F.3d 651 (5th

Cir. 1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir. 1992)).  Further, "the moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Laboratories*, 919 F.2d 301, 303 (5th Cir. 1990).  When the moving party has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts". *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also, Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  FED. R. CIV. P.  56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Industrial Co.*, 475 U.S. at 588.  Finally, substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Hence, pursuant to this standard, partial summary judgment is appropriate in the instant case.

## LAW AND ARGUMENT

One basis of Transco's instant lawsuit is that Transocean's actions and inactions before Hurricane Rita constituted negligence, which caused the mooring system on the MARIANAS to fail and set the vessel adrift in the Gulf of Mexico where it struck and damaged Transco's pipelines.[4]  Thus, Transco's negligence claim against Transocean is governed by the General

---

[4] Transco's other theories of recovery include Transocean's breach of its jurisprudential and statutory duties to investigate the grounding of its rig and notify the U.S. Coast Guard of same so that hazardous conditions could be identified and further damage prevented.

Maritime Law of the United States, which imposes certain rebuttable presumptions of negligence in maritime allisions, one of which was set forth by the U.S. Supreme Court almost 150 years ago in *The Louisiana*[5] and has come to be known as "*The Lousiana* Rule." Application of *The Louisiana* Rule creates the rebuttable presumption that where a drifting vessel has allided with a stationary vessel or object, the drifting vessel is at fault.[6] More specifically, *The Louisiana* Rule provides that a drifting vessel is presumptively liable for damages "unless it can show affirmatively that the drifting was the result it an inevitable accident, or a *vis major*, which human skill and precaution and a proper display of nautical skill could not have prevented."[7] One court stated the purpose of *The Louisiana* Rule as follows:

> This rule derives from the common-sense observation that moving vessels do not usually collide with stationary objects unless the moving vessel is mishandled in some way, and from the observation that any evidence of actual negligence, or the lack of it, is likely to be known only to the persons on board, who are in the best position to either keep damaging evidence hidden, or bring favorable evidence forward.[8]

*The Louisiana* Rule shifts to the drifting vessel the burden of production and the burden of proof, or persuasion.[9] In *James v. River Parishes Company, Inc.*[10], the Fifth Circuit adopted the presumption applicable against a drifting vessel which causes damage:

> When a drifting vessel causes damage, an inference arises as a matter of law that the vessel was adrift through negligence. Such an inference is called a presumption. The custodian of the drifting vessel bears the burden of disproving fault by a preponderance of the evidence. In other words, he bears the risk of non-persuasion. This inference or presumption of negligence is a rule of law based on the logical deduction that a vessel found floating loose was improperly moored.[11]

---

[5]   *The Louisiana*, 70 U.S. 3 (Wall) 164 (1865).
[6]   *Id.*
[7]   *Id* at 173.
[8]   *Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 923 (11th Cir. 2001).
[9]   *Weyerhaeuser Co. v. Atropos Island*, 777 F.2d 1344, 1348 (9th Cir. 1985).
[10]  686 F.2d 1129 (5th Cir.1982).
[11]  *Id.* at 1132-33.

The burden of proving an inevitable accident or an Act of God rests "heavily" upon the vessel asserting such defense and the drifting vessel "must exhaust every reasonable possibility which the circumstances admit and show that in each [it] did all that reasonable care required."[12] The drifting vessel "must show that it was without fault or that the breakaway was inevitable."[13]

Thus, once Transco satisfies its threshold burden of proving an allision between the MARIANAS and Transco's pipelines, *The Louisiana* Rule should apply as a matter of law against Transocean because the undisputed facts establish that it drifted unmanned in the Gulf of Mexico, thereby shifting the burden of proof onto Transocean to prove by a preponderance of the evidence that "the drifting was the result of inevitable accident, or a vis major, which human skill and precaution, and a proper display of nautical skill could not have prevented."[14]

## CONCLUSION

Therefore, for the foregoing reasons, plaintiff, Transcontinental Gas Pipe Line Corporation respectfully requests that this Court grant this Motion for Partial Summary Judgment and/or Motion to Invoke *The Louisiana* Rule and issue an Order declaring that *The Louisiana* Rule will govern the liability questions if causation is established and will shift the burden of proof to Transocean.

---

[12] *Am. River Transp. Co. v. Morton Int'l, Inc.*, No. 06-6103, 2008 WL 2597924, at *3 (E.D.La. June 26, 2008) (Feldman, J.) (citing *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir.1977)).
[13] *Id.* (quoting *Bunge Corp.*, 558 F.2d at 795) (internal quotation marks omitted).
[14] *Id.* at 173.

Respectfully submitted,

KEAN, MILLER, HAWTHORNE,
D'ARMOND, McCOWAN & JARMAN, L.L.P.

_____
MICHAEL A. McGLONE, T.A. (#9318)
LAWRENCE J. HAND, JR. (#23770)
KAREN WATERS SHIPMAN (#27320)
BRETT P. FENASCI (#29858)
909 Poydras Street, Suite 1450
New Orleans, LA  70112
Telephone:  (504) 585-3050
Fax:  (504) 585-3051
**Attorneys for Plaintiff, Transcontinental Gas
Pipe Line Corporation**

## CERTIFICATE OF SERVICE

I Hereby Certify that on the 27th day of April, 2010, I electronically filed the foregoing

with the Clerk of Court by using CM/ECF system which will send a notice of electronic filing to

all counsel of record.

_____